**C.D.S., INC., Plaintiff,**

v.

**Bradley ZETLER, et al., Defendants.**

**16 Civ. 3199 (VM)**

United States District Court,
S.D. New York.

Signed 06/02/2017

Anna Sydney Park, Rosner, Nocera & Ragone, LLP, David Leichtman, David H. Brill, Richard A. Mescon, Shevani Jaisingh, Tatsuya Adachi, Leichtman Law PLLC, Jeremy Evan Deutsch, Deutsch, Metz & Deutsch, LLP, Siddartha Rao, Rao Law Group, Alfred N. Metz, Ami Bhatt, Andrew Parfomak, Christian Vincent Cangiano, Norris McLaughlin & Marcus, P.A., New York, NY, Joseph J. Fleischman, Edward George Sponzilli, Robert Mahoney, Norris, McLaughlin & Marcus, PA, Bridgewater, NJ, for Plaintiff.

Ihsan Dogramaci, Joshua Martin MacLeod, The Law Office of Ihsan Dogramaci, Lewis P. Trippett, Higgins & Trippett L.L.P., New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiff C.D.S. Inc. ("C.D.S.") commenced this action against defendants Bradley Zetler ("Zetler"), CDS, LLC, and Rapid Systems CC (collectively with Zetler and CDS, LLC, "Rapid Systems") alleging in its complaint ("Complaint," Dkt. No. 1) various violations of state and federal law. Rapid Systems has asserted several direct and derivative claims against

C.D.S.; its CEO, Diane Treat ("Treat"); three directors of C.D.S., Jerome Viollon ("Viollon"), Christelle Riot ("Riot"), and Christophe Racle ("Racle"); the majority shareholder of C.D.S., Jerome Marechaux ("Marechaux," together with Viollion, Riot, and Racle, the "Individual Counterclaim Defendants"); and against CDS Sari, a French company majority-owned by Marechaux that employs Viollion, Riot, and Racle (collectively, the "Counterclaim Defendants").

Before the Court are (1) C.D.S.'s motion to adopt and Rapid Systems's objections to the Report and Recommendations of special master Daniel Garrie (the "Special Master") dated May 17, 2017 (the "Report"); (2) C.D.S.'s motion to hold Rapid Systems in contempt; (3) the Court's proposal to amend the Order of the Court dated June 15, 2016 to permit ex parte communications between the Special Master and the Court; and (4) the Special Master's application for an order directing the parties' to pay any outstanding fees due to the Special Master for services provided in this case.

For the reasons described below, (1) C.D.S.'s motion for adoption of the Special Master's Report is granted in part and denied in part, and Rapid Systems's objections to the Report are overruled; (2) C.D.S.'s motion for sanctions is denied; (3) the Court's order dated June 15, 2016 will be amended to permit ex parte communications between the Special Master and the Court; and (4) the Special Master is ordered to submit to the Court more detailed bills accounting for his services in this case.

### I. THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS

#### A. BACKGROUND

On June 6, 2016, this Court granted C.D.S.'s motion for a preliminary injunc-

tion and ordered Rapid Systems to give C.D.S. access to a number of accounts and software tools necessary for C.D.S. to continue operating its business of providing software products to talent and booking agencies in the fashion industry. See C.D.S., Inc. v. Zetler, 190 F.Supp.3d 375, 376 (S.D.N.Y. 2016) (the "Preliminary Injunction Order"). Rapid Systems appealed the Preliminary Injunction Order, and the Second Circuit affirmed. See C.D.S. Inc. v. Zetler et al., 691 Fed.Appx 33, 35, No. 16-2346, 2017 WL 2347559, at *2 (2d Cir. May 31, 2017).

Pursuant to the Preliminary Injunction Order and Rule 53 of the Federal Rules of Civil Procedure ("Rule 53"), the Court appointed Daniel Garrie to serve as special master "to advise the Court and the parties on the technical questions in dispute in this case, facilitate agreement between the Parties on technical and operational issues, monitor compliance with the preliminary injunctive relief, and mediate disputes within the scope of the Preliminary Injunction Order." C.D.S., Inc. v. Zetler, No. 16 CIV. 3199, 2016 WL 3522197, at *1 (S.D.N.Y. June 15, 2016) ("June 15 Order").

By letter dated May 8, 2017, Rapid Systems informed the Court that it had terminated an Exclusive Distributorship Agreement ("EDA") under which C.D.S. had been selling Rapid Systems's products.[1] ("May 8 Letter," Dkt. No. 291.) By letter dated May 10, 2017, C.D.S. alleged that Rapid Systems had "terminated [C.D.S.'s] co-equal access to several features required to administer customers' use of Agencypad that are subject to the [Prelim-

inary Injunction Order]." ("May 10 Letter," Dkt. No. 293.)

Following receipt of the correspondence, the parties appeared before the Court on May 12, 2017. ("May 12 Hearing," see Dkt. Minute Entry dated May 12, 2017.) At the May 12 Hearing, the parties agreed that Rapid Systems, in connection with terminating the EDA, had terminated C.D.S.'s access to the Portfoliopad "Rapid Administration" database. That database underlies both Agencypad, the software at issue in this litigation, and the Portfoliopad software, which is owned by Rapid Systems and which was being sold by C.D.S. pursuant to the EDA prior to its termination. As a result, C.D.S. was unable to make the following changes in Agencypad: (1) create user accounts, (2) modify passwords, (3) customize user settings, (4) disable existing users, (4) create agencies, and (5) modify and customize existing agencies. (See May 12, 2017 Transcript at 16:10–14, 19:13–17, 32:11–37:25.) Rapid Systems argued that it had made changes to Portfoliopad—of which Rapid Systems is the undisputed owner—and not to Agencypad. C.D.S. argued that since Rapid Systems's modifications had altered the functionality of Agencypad, including C.D.S.'s ability to add new clients, Rapid Systems had violated the Preliminary Injunction Order by failing to maintain the status quo during the pendency of the litigation.

At the conclusion of the May 12 hearing, the Court ordered the parties to consult with the Special Master regarding an appropriate procedure to return the parties to the status quo that existed prior to May 8, 2017. (See Dkt. Minute Entry dated May 12, 2017.) The Court directed the

---

1. The EDA, to which C.D.S., CDS Sarl and Rapid Systems are parties, is governed by French law and has a forum selection clause vesting exclusive jurisdiction in the Paris Commercial Court. (See Dkt. No. 306–3 at 5; May 12, 2017 Transcript at 4:19–23, 7:9–12.)

Several actions arising out of the EDA are currently pending in the Paris court, but no claim for breach of the EDA is before this Court. (See May 12, 2017 Transcript at 7:12–15.)

Special Master to submit a report to the Court "concerning what is necessary to restore the status quo and to what extent it can be done without in any way harming the rights that Rapid Systems has in this matter up to this point." (May 12, 2017 Transcript at 64:9–12.)

On May 17, 2017, the Special Master submitted his report and recommendations to the Court and the parties. ("Report," on file with chambers.) The Special Master recommends that (1) the Court order Rapid Systems to restore interim access to the Portfoliopad database that existed prior to its actions on May 8, 2017, and (2) the Court order the parties to develop a permanent solution devised by the Special Master by which C.D.S. would again have "the ability to add and edit agencies and users of Agencypad" without "restoring Portfoliopad functionality that was restricted by [Rapid Systems'] actions on May 8, 2017." (Report at 2.)

By letter dated May 17, 2017, Rapid Systems requested an opportunity to be heard regarding the Report pursuant to Rule 53(f) (1) and stated its intention to object to the Report pursuant to Rule 53(f)(2). ("May 17 Letter," Dkt. No. 295.) By letter dated May 18, 2017, C.D.S. requested that the Court adopt the Report and impose sanctions on Rapid Systems for violating the Preliminary Injunction Order. ("May 18 Letter," Dkt. No. 296.) On May 19, 2017, the Court ordered the parties to submit any objections to the Report by not later than May 25, 2017. (See "May 19 Order," Dkt. No. 297.)

Pursuant to the May 19 Order, C.D.S. moved, on May 25, 2017, for adoption of the Report. (See Dkt. No. 300.) Specifically, C.D.S. requests that the Court order (1) restored access as it existed prior to May 8, 2017; (2) implementation of the Special Master's proposals for adding licensed users to existing customers' accounts, for renewals of existing customers and for continued sales of Agencypad only; and, alternatively, (3) implementation of the Special Master's recommended "workaround" to achieve restoration of functionality. (Id. at 1–12.) C.D.S. also requests that the Court order Rapid Systems to "cease contacting [C.D.S.'s] customers, cease offering Agencypad [for sale], and to turn over any customers who have purchased Agencypad from them to C.D.S. immediately." (Id. at 13–14.) Lastly, C.D.S. argues that Rapid Systems should (1) be sanctioned for unnecessarily multiplying the proceedings and (2) be held in contempt for violating the injunction. (Id. at 15–16.)

Rapid Systems opposes adoption of the Special Master's Report on the ground that ordering the Special Master's recommended remedy would be tantamount to issuing a new preliminary injunction. ("Opposition Memorandum," Dkt. No. 304.) Rapid Systems argues that the Preliminary Injunction Order applies only to Agencypad, not Portfoliopad. Rapid Systems argues that, because creating a new account in Agencypad requires access to the administrative section of the Portfoliopad database, such action would mean that C.D.S. would effectively be continuing to sell Portfoliopad, which it is not permitted to do following the termination of the EDA. Accordingly, Rapid Systems argues, requiring Rapid Systems to take affirmative steps to give C.D.S. access to the Portfoliopad administrative section would go beyond the existing Preliminary Injunction Order and require Rapid Systems to give C.D.S. access to Rapid Systems's property.

Although Rapid Systems does not agree to allow C.D.S. to create new accounts, it would agree to modifications that would allow C.D.S. to make edits to existing Agencypad users. (Opposition Memorandum at 10.) Rapid Systems maintains,

however, that it is not obligated to allow C.D.S. to make such changes. (Id.)

Rapid Systems also argues that granting the Special Master the power to determine the extent of C.D.S.'s access to the database violates Rule 65(d) of the Federal Rules of Civil Procedure ("Rule 65(d)"), which requires an injunction to "state its terms specifically [and] describe in reasonable detail ... the act or acts restrained or required." Fed. R. Civ. P. 65(d).

Rapid Systems also opposes C.D.S.'s request for a contempt finding, arguing that (1) C.D.S. failed to comply with Local Civil Rule 83.6, which states that contempt proceedings "shall be commenced by service of a notice of motion or order to show cause"; (2) C.D.S. fails to identify any order violated by Rapid Systems; and (3) Rapid Systems has attempted to comply with every order of the Court.

Finally, Rapid Systems argues that the Special Master should be disqualified from serving as special master in connection with any additional relief offered because of his relationship with Siddharta Rao ("Rao"), whose earlier application to substitute C.D.S.'s prior counsel in this matter was denied by Order of Magistrate Judge James Cott, to whom the Court referred this action for supervision of pretrial proceedings.

On March 13, 2017, Magistrate Judge Cott conducted a hearing to determine whether Rao could appear for C.D.S. in this matter in light of his prior professional relationship with the Special Master. Magistrate Judge Cott found that Daniel Garrie could not have been appointed as a special master in this case "had the facts now in the record [regarding his connection with Rao] come to light at the time of his appointment and had Rao been counsel at that time." ("March 23 Order," Dkt. No. 251, at 14.) On that basis, the Magistrate Judge Cott denied Rao's application for approval to substitute C.D.S.'s prior counsel.

On March 3, 2017, when the Court's decision on Rao's appointment was pending, C.D.S. requested that Rao be able to serve as "document management counsel" to C.D.S. without appearing in the case. (March 3, 2017 Transcript, Dkt. No. 306–19, at 15:20–16:14.) For the same reasons as Rao's appointment as counsel was later denied, Magistrate Judge Cott denied C.D.S.'s application to permit Rao to serve in this limited capacity. (See id. at 18:2–20–3.)

Rapid Systems now relies upon C.D.S.'s March 3, 2017 request. and unspecified "relevant testimony" from Viollon to argue that Rao continues to have a relationship with C.D.S. (Opposition Memorandum at 24 n.11.) On that basis, Rapid Systems asks this Court to replace the Special Master. (See id. at 24–25.)

## B. DISCUSSION

### 1. The Special Master's Report and Recommendation

■ Rapid Systems's argument that adoption of the Special Master's Report would constitute a new injunction against Rapid Systems is meritless. To the contrary, the affirmative steps the Report would require of Rapid Systems are intended to minimize the disruption to Rapid Systems while allowing C.D.S. to continue to operate its business of selling Agencypad. Enabling C.D.S. to continue selling Agencypad during the pendency of this litigation was the purpose of the Preliminary Injunction Order. The Court is persuaded that the recommendations of the Special Master, as detailed in the Report, would achieve that purpose while attempting to minimize any the disruption to Rapid Systems and C.D.S.'s access to portions of the database that are linked only to the Portfoliopad software, not to Agencypad.

Although the Court is persuaded that the Special Master's proposed "workaround" is an appropriate measure to ensure continued compliance with the Preliminary Injunction Order, restoring interim access to the entire database appears to go beyond what is necessary for C.D.S. to operate as it had been prior to March 8, 2013, and C.D.S. does not appear to argue that it would be irreparably harmed by loss of temporary access to creating new accounts. The Court will therefore not adopt the Special Master's recommendation to temporarily restore C.D.S.'s full access to the Portfoliopad database as it existed prior to May 8, 2017.

Rapid Systems's argument that the Portfoliopad database, without which Agencypad cannot function, belongs to Rapid Systems and is not at issue in this dispute goes to the heart to the merits of this case. Rapid Systems contends that it is "obvious" that the database used by Agencypad is part of Portfoliopad. (Opposition Memorandum at 14–17 & n.8.) But that argument is both conclusory and overstated. The ownership of Agencypad's database, and of tables on which Agencypad's operation relies, must be decided by the trier of fact in this case and not by the Court at this stage of the proceedings. The purpose of the Preliminary Injunction Order was to provide C.D.S. access to the tools necessary for it to continue to operate its business pending the resolution of these open questions of fact. Enforcing the Preliminary Injunction Order. requires maintaining C.D.S.'s ability to sell Agencypad to new customers, which is the essence of C.D.S.'s business. Determining at this stage, as Rapid Systems asks the Court to do, that the Portfoliopad database is beyond the scope of this dispute would entail both deciding an issue of fact without the benefit of a complete record and thus to render the Preliminary Injunction Order toothless. The Court declines to make such a determination at this stage.

Rapid Systems maintains that C.D.S.'s access to Portfoliopad's administrative section, and therefore C.D.S.'s continued ability to function as it had been prior to May 8, 2017, ended when Rapid Systems terminated the EDA on that date, and that restoring C.D.S. to the status quo would would effectively amount to a granting of a new injunction without compliance with Rule 65 of the Federal Rules of Civil Procedure. This argument ignores an essential point. The equal access requirement in effect prior to May 8, 2017 did not derive from the EDA, but from the Preliminary Injunction, which in turn was grounded on determinations by the Court that a material dispute existed concerning the ownership of the Agencypad database, that Rapid Systems's prior action in curtailing C.D.S.'s access to that database would cause C.D.S. irreparable harm, and that C.D.S. had demonstrated a sufficient likelihood of success on the merits. These findings did not stem from any assessment of contractual rights existing under the EDA.

Accordingly, C.D.S.'s motion for adoption of the Special Master's Report is hereby granted in part and denied in part.

## 2. Disqualification of the Special Master

■ Rapid Systems's request for a new special master to oversee the relief ordered by the Court also lacks merit. The Court has previously denied Rao's application to substitute as counsel for C.D.S. because of his prior relationship with the Special Master. (See March 23 Order; see also Dkt. No. 263.) In finding that Rao's relationship with the Special Master prevented Rao from representing C.D.S. in this litigation, the Court held that because the Special Master "has spent significant time on this case . . . the removal of Garrie in order to allow Rao to represent the Plaintiffs is not a realistic option—nor have the parties made such an application." (March 23 Order at 14.)

Given that Rapid Systems prevailed on its prior request to preclude Rao's representation, no conflict exists that would prevent the Special Master's continued service on this case. Rapid Systems's evidence of a continuing relationship between Rao and C.D.S. consists of a request for Rao to represent C.D.S. in a limited capacity—a request that was denied by the Court. The only other evidence that post-dates the Court's decision to preclude Rao from service as counsel is "relevant testimony [by Viollon] which will be supplied to the Court on request." (Opposition Memorandum at 24.) Rapid Systems does not even allege that Viollon's testimony supports its claim that Rao continues to represent C.D.S., or that such information would sufficiently bear on this proceeding to support the Special Master's dismissal.

Without compelling evidence that Rao continues to represent C.D.S. in this case, there is no appearance of bias on the part of the Special Master. Rapid Systems has twice prevailed on its argument that Rao, because of his prior relationship to the Special Master, should be precluded from representing C.D.S. Now that Rao's involvement has been precluded, Rapid Systems cannot also obtain the disqualification of the Special Master. Rapid Systems's request to disqualify the Special Master is therefore denied. Any further motions to remove the Special Master would be frivolous absent substantiated evidence that Rao continues to represent C.D.S. in connection with this matter despite the Court's orders.

### 3. Finding of Contempt

▆▆▆ The Court is persuaded that there is no basis for finding Rapid Systems in contempt. "A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not dili-

gently attempted to comply in a reasonable manner." CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016) (citing Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004)). Although Rapid Systems's changes to the Portfoliopad database tables that altered the functionality of Agencypad runs counter to the Preliminary Injunction Order, the Court is persuaded that Rapid Systems reasonably believed that the Portfoliopad database was outside the scope of the Preliminary Injunction Order.

For similar reasons, sanctions pursuant to 28 U.S.C Section 1927 are not appropriate at this point. Under that statute, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. Section 1927. Although the conduct of this litigation generally, including the excessive number of dispute and motions the parties have brought to the Court, is both "unreasonabl[e]" and "vexatious[ ]" to this Court, there is no evidence that Rapid Systems or its counsel made changes to the Portfoliopad database in order to multiply or delay these proceedings.

Accordingly, C.D.S.'s motion to hold Rapid Systems in contempt is denied.

## II. EX PARTE COMMUNICATIONS

### A. BACKGROUND

By letter dated May 16, 2017, Rapid Systems informed the Court that it objects to any ex parte communications between the Special Master and the Court. Rapid Systems argues that, under Rule 53, any provision for ex parte communications must be explicit and, because the June 15 Order is not, any such communications are inappropriate. ("May 16 Letter," Dkt. No. 294.)

On May 19, 2017, the Court put the parties on notice that it intended to amend the June 15 Order pursuant to Rule 53(b)(4) to permit ex parte communications between the Special Master and the Court. (May 19 Order at 6.) The Court stated that when it appointed the Special Master, it "intended that the Special Master be permitted to advise the Court ex parte, but failed to make that explicit in the June 15 Order." (Id.) The Court therefore ordered the parties to submit any objections to amending the June 15 Order by May 26, 2017. (Id.)

By letter dated May 26, 2017, C.D.S. "agree[s] that ex parte communications . . . would assist the Court, and thus do[es] not object to a modification of the June 15, 2016 Order to make that more explicit." (Dkt. No. 307.)

By separate letter dated May 26, 2017, Rapid Systems objects to amending the June 15 Order. (Dkt. No. 308.) Rapid Systems first argues, as it did in its objections to the Report, that Daniel Garrie should not be a special master in this case because of his prior connection to Rao. Rapid Systems argues that Rao, despite not appearing for C.D.S. in this action, has a continuing relationship with C.D.S., thereby creating an appearance of bias on the part of the Special Master. Because of this appearance of bias, Rapid Systems argues, the Special Master should not communicate with the Court ex parte.

Rapid Systems also argues that ex parte communications are contrary to the adversarial process and that, in light of what it perceives as bias on the part of the Special Master, if ex parte communications are permitted, a record of any such communications should be created and preserved.

## B.  DISCUSSION

■ Rule 53 requires that the order appointing a special master must state "the circumstances, if any, in which the master may communicate ex parte with the court or a party." Fed. R. Civ. P. 53(b)(2)(B). "Ordinarily[,] the order should prohibit such communications, assuring that the parties know where authority is lodged at each step of the proceedings . . . . Yet there may be circumstances in which the master's role is enhanced by the opportunity for ex parte communications with the court." Fed. R. Civ. P. 53 advisory committee's note. "The rule does not directly regulate these matters. It requires only that the court exercise its discretion and address the topic in the order of appointment." Id.

The Court is persuaded that permitting ex parte communications between the Court and the Special Master would assist the court in understanding the complicated technical issues involved in this case. Where, as here, the relationship between the parties is so acrimonious that essentially any communication or attempted cooperation requires supervision by the Court, requiring the parties to attend meetings between the Court and the Special Master would substantially inhibit speedy administration of this case and the numerous motions and applications filed by the parties on an almost-daily basis.

For similar reasons, the Court is not persuaded that creating a record of each ex parte communication with the Special Master would be advisable. Not only would that require additional allocation of the Court's scarce resources but would, if the past is any guide, likely lead to additional letter practice by the parties.

Accordingly, to ensure efficient and expedient resolution of the issues in this case, the June 15 Order will be amended to permit ex parte communications between the Special Master and the Court. An amended order will follow.

## III. THE SPECIAL MASTER'S FEES

In appointing the Special Master, the Court ordered that "Mr. Garrie's fees and reasonable expenses relating to his duties as special master shall be allocated as follows: 50 percent to be paid by [C.D.S.] and 50 percent to be paid by [Rapid Systems]." C.D.S., 2016 WL 3522197, at *1.

On June 28, 2016, the Special Master submitted proposed recommendations, later stipulated to by the parties, for procedures by which to implement the Preliminary Injunction Order. See C.D.S., Inc. v. Zetler, No. 16 CIV. 3199, 2016 WL 7668473, at *4 (S.D.N.Y. June 29, 2016). Under those procedures, a party requesting immediate resolution of a software issue related to Agencypad must submit a "hot patch," the implementation of which is decided by the Special Master. Id. "The losing Party is to pay the Special Master's fees in connection with the resolution of [the submitted Hot Patch] issue." Id.

By Order dated February 24, 2017, the Court denied Rapid Systems's request for modification of the Special Master's fees. See C.D.S., Inc. v. Zetler, No. 16 CIV. 3199, 2017 WL 1019499, at *6 (S.D.N.Y. Feb. 24, 2017).

By letter dated April 13, 2017, Rapid Systems objected to the fees invoiced by the Special Master on the grounds that the timesheets accompanying the invoices are deficient because they (1) use "block billing"; (2) contain descriptions of the work performed that are unreasonably vague; and (3) include excessive time that should not have been billed to the parties. ("April 13 Letter," Dkt. No. 277.)

At the May 12, 2017 Hearing, the Court ordered the Special Master to submit an application to the Court for payment of his fees. (May 12, 2017 Transcript at 2:25–

3:19.) On May 17, 2017, the Special Master submitted to the Court a "Declaration of Special Master Daniel Garrie and Request for Order to Show Cause." ("Garrie Declaration," on file with chambers.) The Garrie Declaration attached, among other things, invoices from JAMS, the organization through which the Special Master was retained. (Garrie Declaration, Ex. B at 3.) Invoices for $80,553.30 were addressed to counsel for C.D.S. (Id.) Invoices for $105,553.30 were addressed to counsel for Rapid Systems. (Id. at 6.) The Special Master stated that those were the amounts he was owed by each party. (Garrie Declaration at 1.) The Special Master explained that "the parties' unnecessarily voluminous submissions to the Special Master and failure to cooperate on technical matters ... have significantly increased the time and resources the Special Master has had to expend to perform his duties." (Id. at 2.)

By letter dated May 18, 2017, Rapid Systems objects to the Garrie Declaration. ("May 18 Letter," Dkt. No. 298.) Rapid Systems renews its objections from the April 13 Letter, and argues that the Special Master was the cause of any additional time spent on the matter, and that the Special Master unfairly singles out Rapid Systems, when C.D.S. is equally culpable. (Id.)

Rapid Systems may quibble with the Special Master's particular descriptions of the ways in which the parties have needlessly increased the Special Master's workload, but the Court has no basis to dispute the amount of time that the Special Master has devoted to this action. The Special Master's explanation that the parties' "unnecessarily voluminous submissions ... and failure to cooperate" increased the time the Special Master spent on this case is certainly consistent with the parties' conduct in this Court, as this Court itself has previously noted.[2] Accordingly, the

---

2. In the February 24 Order, the Court provid-   ed examples of the parties' excessive litigation

Court will not modify the time billed by the Special Master on that ground.

The Court agrees, however, that the Special Master should not have used block billing and vague descriptions of his work. "While 'block billing is not prohibited in this Circuit,' the substantial amount of block billing ... renders it difficult to determine whether, and/or the extent to which, the work done ... is duplicative or unnecessary." Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc., 277 F.Supp.2d 323, 325–26 (S.D.N.Y. 2003)(quoting Rodriguez v. McLoughlin, 84 F.Supp.2d 417, 425 (S.D.N.Y. 1999)) (citation omitted). Accordingly, to enable the Court to evaluate the Special Master's requested fees, the Special Master is directed to submit invoices to the Court that do not use block billing and contain more detail regarding the work done by the Special Master.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 300) of plaintiff C.D.S. Inc. ("C.D.S.") for adoption of the Report and Recommendation of Special Master Daniel Garrie dated May 17, 2016 (the "Report") is **GRANTED** as to Part III–A, III–B and III–C of the Report without modification; and it is further

**ORDERED** that the motion (Dkt. No. 300) of plaintiff C.D.S. for adoption of the Report is **GRANTED** as to Part III–D of the Report with the modification that the relief ordered is to be completed within five business days of the entry of this order; and it is further

**ORDERED** that the motion of plaintiff C.D.S., Inc. to hold defendants Bradley

Zetler, CDS LLC and Rapid Systems CC in contempt is **DENIED**; and it is further

**ORDERED** that the Decision and Order issued by this Court on June 15, 2016 be amended to allow for <u>ex parte</u> communications between the Special Master and the Court; and it is further

**ORDERED** that special master Daniel Garrie submit to the Court, in support of his application for payment of fees, invoices that do not use "block billing" and that contain sufficient detail to allow the Court to evaluate the work.

**SO ORDERED.**

---

practices "as a formal record putting the parties on notice that the intensity of their litigation has crossed the boundaries of reasonable and expected zealous advocacy, and that should it continue at such extremes may give rise to consideration of appropriate monetary sanctions. C.D.S., 2017 WL 1019499, at *4 n.1.