VICTOR MARRERO, United States District Judge.
Plaintiff C.D.S., Inc. ("C.D.S.") brought this action against defendants Bradley Zetler ("Zetler"), CDS, LLC, and Rapid Systems CC (collectively, "Rapid Systems"), seeking declaratory judgments that Rapid Systems's copyright and trademark registrations for the software "Agencypad" and its underlying computer code and database are void, and that C.D.S. is the sole owner of rights to trademark and copyright the software. (See"Complaint," Dkt. No. 1.) The Complaint also seeks monetary damages for various violations of state and federal law. (See id. )
Rapid Systems has asserted several direct and derivative counterclaims against C.D.S.; its CEO, Diane Treat; three directors of C.D.S., Jerome Viollon, Christelle Riot, and Christophe Racle; the majority shareholder of C.D.S., Jerome Marechaux ("Marechaux"); and CDS SARL, a French company majority-owned by Marechaux (collectively, the "Counterclaim Defendants"). (See"Second *554 Amended Answer," Dkt. No. 139.) Two of the derivative counterclaims are brought by Zetler, as a C.D.S. shareholder, asserting ownership rights on behalf of C.D.S. over the software "CDS6" and seeking to remedy the uncompensated use of that software by CDS SARL. (See id. ¶¶ 289-99.)
Before the Court are several letters the parties submitted in anticipation of the upcoming trial regarding the scope of triable issues in this case. For the reasons discussed below, the Court orders that: (1) Rapid Systems is collaterally estopped from arguing that the ownership of the portions of a database relied upon by Agencypad is governed by contract; (2) Rapid Systems is not collaterally estopped from arguing that C.D.S., and not CDS SARL, owns the software CDS6; (3) Zetler has standing to bring derivative counter-claims on behalf of C.D.S. to enforce C.D.S.'s alleged ownership rights over CDS6; and (4) United States law applies to all copyright ownership and infringement questions related to the database underlying Agencypad.
I. BACKGROUND
Agencypad is a software used to assist members of the fashion industry manage their logistical needs, such as booking and scheduling assignments for fashion models. (See Complaint ¶ 65.) Throughout this litigation, C.D.S. has argued that it owns the rights to trademark Agencypad and to copyright its supporting computer code because the software was developed by C.D.S. employees within the scope of their employment and so constitutes a work-for-hire under 17 U.S.C. Section 201(b).[1] See, e.g., C.D.S., Inc. v. Zetler, 198 F.Supp.3d 323, 340 (S.D.N.Y. 2016) (order denying C.D.S.'s motion for partial summary judgment regarding the ownership of Agencypad). Rapid Systems, on the other hand, has argued that Agencypad is an extension of its software Portfoliopad and that its copyrights for Portfoliopad and Agencypad are valid and enforceable. (See, e.g., First Amended Answer ¶ 237-48.)
There is no dispute that Rapid Systems owns Portfoliopad, but complicating this case is the fact that the functionality of both Agencypad and Portfoliopad depend on various tables stored in the same database (the "Database"). See C.D.S., Inc. v. Zetler, 254 F.Supp.3d 625, 631 (S.D.N.Y. 2017). For Agencypad to function properly, it requires access to certain portions of the Database (the "Agencypad Data"[2] ), at least some of which were created before Agencypad existed. (See Dkt. No. 389 at 5 (letter by Counterclaim Defendants admitting that some of the Agencypad Data predated Agencypad).) Rapid Systems contends that the entire Database is part of Portfoliopad and so Rapid Systems owns the Database regardless of the ownership of Agencypad. See C.D.S., 254 F.Supp.3d at 631. On the other hand, the Counterclaim Defendants contend that Rapid Systems does not own the Agencypad Data. See id. The Counterclaim Defendants also argue that Rapid Systems's copyright registrations *555 in the Agencypad Data are invalid because the Database is not original work that is copyrightable.
Related to this case is an action in France (the "French Action") brought by Rapid Systems against C.D.S. and CDS SARL for breaching a 2001 Exclusive Distributorship Agreement (the "EDA") by, among other things, bringing the instant case claiming ownership over Agencypad, which Rapid Systems alleged ownership over under the terms of the EDA. (See Dkt. No. 386, Ex. A.) In the French Action, the Commercial Court of Paris, 8th Chamber, found that Agencypad is not a "Contractual Product," meaning that its ownership is not governed by the EDA. (Id. at 8.) The Commercial Court also stated by way of background that CDS SARL "developed software, the latest version of which is called CDS6 ...." (Id. at 2.)
Rapid Systems appealed the decision of the Commercial Court of Paris, and the Appellate Court of Paris affirmed the finding that Agencypad is not a contractual product, and so its ownership should be determined under the law of intellectual property and not contract. (See Dkt. No. 386, Ex. B at 7.) The Appellate Court reasoned that "the mere fact" that Agencypad and Portfoliopad share the same Database does not entail that Agencypad is a contractual product along with Portfoliopad. (Id. at 8.) The Appellate Court concluded that instead of being an outgrowth of Portfoliopad, as Rapid Systems argued, "[i]t appears ... on the evidence before the court that the Agencypad software is an upgrade of CDS6 software owned by C.D.S. Inc." (Id. at 9.)
In response to the Appellate Court decision, Rapid Systems brought an application for a failure to adjudicate certain claims. (See Dkt. No. 386, Ex. C at 2.) Specifically, Rapid Systems claimed that the Appellate Court failed to adjudicate its claim that, under the terms of the EDA, Rapid Systems is the owner of the Agencypad Data. (See id. ) On Rapid Systems's application, the Appellate Court concluded:
[T]he database operating with Agencypad, in the 'Agencypad System,' does not moreover constitute a contractual product as set forth in the distribution agreement and cannot be considered as 'relating' to the software Portfoliopad nor as an 'evolution' of the software Portfoliopad. Further, it has not been demonstrated to this Court which company holds the ownership of this database, this question not having been raised before this Court, as it falls under the competency of other jurisdictions.
(Id. at 3.) The Appellate Court thus concluded that the ownership of the Agencypad Data was not governed by the EDA.
C.D.S. also brought a motion in response to the first Appellate Court decision, seeking to rectify an alleged error in the original decision regarding the ownership of CDS6. (See id. at 2.) Specifically, C.D.S. moved for the Appellate Court to replace the statement "[i]t appears ... on the evidence submitted to the court that the software Agencypad constitutes an evolution of the software CDS6 belonging to CDS Inc." from the original Appellate Court decision with the statement "[i]t appears ... on the evidence submitted to the court that the software Agencypad constitutes an evolution of the software CDS6 belonging to CDS SARL." (Id. at 3-4 (emphases added)). Rapid Systems did not respond to C.D.S.'s motion to rectify an error, and the Appellate Court granted it. (See id. at 4)
Presently before the Court is the parties' letter correspondence regarding the effects of the French Action on the upcoming trial in this case. On November 20, 2017, the Counterclaim Defendants submitted a letter arguing that the Court *556 should preclude Rapid Systems from re-litigating legal issues decided by the French courts in the French Action on collateral estoppel grounds. (See Dkt. No. 385, the "November 20 Letter.") Specifically, the Counterclaim Defendants argue that at trial Rapid Systems should not be permitted to challenge the decisions by the French courts that: (1) Agencypad is not a contractual product; (2) the Agencypad Data is not a contractual product; and (3) that the CDS6 software is owned by CDS SARL and not C.D.S. (See id. at 3-4.) The November 20 Letter further argues that regardless of the collateral estoppel issues, Zetler lacks standing to bring derivative claims on behalf of C.D.S. that are based on C.D.S.'s alleged ownership of CDS6. (See id. at 4-5.)
By letter dated December 4, 2017, Rapid Systems opposes the Counterclaim Defendants' claims regarding the scope of triable issues. (See Dkt. No. 388, the "December 4 Letter.") First, Rapid Systems acknowledges that the French courts decided that Agencypad is not a contractual product, and so Rapid Systems is collaterally estopped from claiming that Agencypad is a contractual product "in this or in any later action." (Id. at 3.) However, Rapid Systems argues, the French courts did not decide whether the Agencypad Data is a contractual product, and so Rapid Systems should not be precluded from arguing at trial that Rapid Systems owns the entire Database under the terms of the EDA. (See id. at 4-5.)
Second, Rapid Systems argues that any mention of the ownership of CDS6 in the French courts' decisions was incidental to their decisions and so should not have preclusive effects in this case. (See id. at 6-7.) Consequently, Rapid Systems argues, Zetler should be permitted to pursue derivative claims that are based on C.D.S.'s ownership of CDS6, and the jury should decide which company owns that software. (See id. )
Third, Rapid Systems argues that if the ownership of the entire Database is not governed by the EDA, then the question arises whether intellectual property claims over the Database should be decided under the laws of the United States or South Africa, where the Database was first created. (See id. at 7.) Rapid Systems argues that South African law should apply to the question of whether the Database constitutes original work that is copyrightable in the first place. (See id. ) Finally, Rapid Systems argues that Zetler does have standing as a shareholder to bring a derivative suit against C.D.S. for failing to enforce its ownership rights over CDS6. (See id. at 8.)
By letter dated December 11, 2017 (Dkt. No. 389, the "December 11 Letter"), the Counterclaim Defendants reply to Rapid Systems's arguments. The Counterclaim Defendants first argue that the French courts clearly decided that the Agencypad Data is not a contractual product and so Rapid Systems should be estopped from claiming that the ownership of that database is determined by the EDA. (See id. at 1-2.) Second, the Counterclaim Defendants argue that the French courts' findings regarding the ownership of CDS6 were necessary to the decisions in the French Action, and so should have preclusive effects in this case. (See id. at 2-4.) Specifically, the Counterclaim Defendants argue that the ownership of CDS6 was necessary to the disposition of the French Action because the French courts' finding that Agencypad is not a contractual product depended on the finding that Agencypad was an outgrowth of CDS6, and not Portfoliopad. (See id. )
Third, the Counterclaim Defendants argue that Zetler lacks standing to challenge the ownership of CDS6 because his counterclaims *557 are not actually derivative claims since the claims would benefit only himself and not the company he alleges to represent as a shareholder. (See id. at 4-5.) Finally, the Counterclaim Defendants argue that United States law should apply to all of the copyright questions in this case, which are ultimately about an alleged infringement in the United States based on United States copyright law. (See id. at 5.)[3]
II. DISCUSSION
The parties' recent correspondence raises the following four issues regarding the scope of the upcoming trial: (1) whether Rapid Systems will be collaterally estopped from arguing that the ownership of the Agencypad Data is governed by the EDA; (2) whether Rapid Systems will be collaterally estopped from arguing that C.D.S., and not CDS SARL, owns CDS6; (3) even if Rapid Systems is not collaterally estopped from challenging the ownership of CDS6, whether Zetler has standing to bring derivative claims based on C.D.S.'s alleged ownership of CDS6; and (4) whether the dispute over whether the Agencypad Data is original and copyrightable will be decided under United States or South African law.
A. COLLATERAL ESTOPPEL
Collateral estoppel precludes a party from raising an issue where:
(1) [T]he identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.
Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation marks and citation omitted); see also Tarazi v. Truehope Inc., No. 13-cv-1024, 2017 WL 5957665, at *18 (S.D.N.Y. July 28, 2017), report and recommendation adopted, 2017 WL 5957745, at *1 (S.D.N.Y. Nov. 30, 2017) (applying the Second Circuit's issue preclusion test to a judgment from a foreign jurisdiction, specifically a Canadian court).
The final factor of the test-whether resolution of the issue was "necessary" for a prior judgment-hinges on whether the court's purported resolution of the potentially precluded issue constituted dicta in the prior court decision or whether the court actually relied on the resolution of the issue as a necessary element to reach a final judgment on the merits. See Overview Books, LLC v. United States, 438 Fed.Appx. 31, 33-34 (2d Cir. 2011) (concluding that the final factor was satisfied where the prior court's resolution of the issue "was not mere dicta; it was a necessary element of the court's conclusion").
*558 If the four elements of an issue preclusion claim are satisfied, then "collateral estoppel applies even if the subsequent action asserts a different cause of action, or the issue recurs in the context of a different claim." Luo v. Baldwin Union Free Sch. Dist., 677 Fed.Appx. 719, 721 (2d Cir. 2017) (internal quotation marks and citation omitted).
The Counterclaim Defendants argue that Rapid Systems should be collaterally estopped from re-litigating two issues that they contend were already decided by the French courts: (a) whether the ownership of the Agencypad Data is governed by the EDA; and (b) whether CDS6 is owned by CDS SARL or C.D.S.
1. Issue Preclusion with Respect to the Ownership of the Database Underlying Agencypad
The French courts decided that the ownership of the Agencypad Data is not governed by the EDA, and so Rapid Systems will be precluded from challenging that decision at trial of the action before this Court. All four prongs of the Second Circuit's collateral estoppel test are met here. First, "the identical issue was raised in a previous proceeding," Interoceanica, 107 F.3d at 91, when, after the Appellate Court of Paris affirmed the Commercial Court's decision that Agencypad is not a contractual product, Rapid Systems brought an application to rectify the Appellate Court's failure to adjudicate its claim regarding the ownership of Agencypad Data. (See Dkt. No. 386, Ex. C at 2.) Specifically, as Rapid Systems now asserts, it brought the motion to rectify for the purpose of establishing that Agencypad Data is owned by Rapid Systems under the EDA. (See December 4 Letter at 4-5.)
Second, "the issue was actually litigated and decided in the previous proceeding." Interoceanica, 107 F.3d at 91. In response to Rapid Systems's application, the Appellate Court ruled that "the database operating with Agencypad, in the 'Agencypad System,' does not moreover constitute a contractual product as set forth in the distribution agreement and cannot be considered as 'relating' to the software Portfoliopad nor as an 'evolution' of the software Portfoliopad." (Dkt. No. 386, Ex. C at 3.) That is, the Appellate Court decided that the ownership of the Agencypad Data is not governed by the EDA. This issue, raised by Rapid Systems to the Paris Appellate Court, is the precise one it now wants to litigate at trial here.
Third, after the Paris Appellate Court issued its reasoned opinion, Rapid Systems raised the issue of the ownership of the Agencypad Data to that court, which then issued a second reasoned opinion addressing this particular question. The French Action thus provided Rapid Systems "a full and fair opportunity to litigate the issue." Interoceanica, 107 F.3d at 91.
Fourth, with its application to rectify the Paris Appellate Court's failure to adjudicate an issue, Rapid Systems sought to establish its ownership over the Agencypad Data, regardless of whether it could claim ownership over the Agencypad software. (See December 4 Letter at 4.) The Appellate Court then issued an opinion specifically addressing that issue on the merits. Additionally, the Appellate Court clarified with its second decision that its central holding in the case-that the EDA does not govern Agencypad-applied to the Agencypad Data as well. Thus, the Appellate Court's decision regarding the issue Rapid Systems now seeks to dispute, namely the ownership of the Agencypad Data, was "necessary to support a valid and final judgment on the merits" in the *559 French Action. Interoceanica, 107 F.3d at 91.
Because the issue of whether the ownership of the Agencypad Data is governed by the EDA was fully litigated and adjudicated on the merits in the French Action, Rapid Systems is collaterally estopped from raising the same issue at trial in this case.[4]
2. Issue Preclusion with Respect to the Ownership of CDS 6
The Counterclaim Defendants argue that Zetler should be precluded from bringing counterclaims based on the disputed fact that C.D.S. owns CDS6 because the French courts already decided that CDS SARL, and not C.D.S., owns CDS6. (See December 4 Letter at 5-6.) The central question in the French Action was whether Rapid Systems owns Agencypad under the terms of the EDA. Rapid Systems argued, among other things, that Agencypad was a contractual product under the EDA because Agencypad evolved from Portfoliopad, which was indisputably a contractual product. In concluding that Agencypad is not a contractual product, the Appellate Court of Paris found that Agencypad appears to have developed from CDS6 and not from Portfoliopad. (See Dkt. No. 386, Ex. B at 9.) This point was relevant to the extent that it showed that Agencypad did not develop from the contractual product Portfoliopad but instead from a product, CDS6, that Rapid Systems did not own. (See id. )
Whether C.D.S. or CDS SARL owned CDS6 was thus beside the point; either way, CDS6 was owned by an adversary of Rapid Systems and was not a contractual product. As a result, when C.D.S. sought for the Appellate Court to correct the statement in its first decision that CDS6 was owned by C.D.S. as opposed to CDS SARL, the Appellate Court was able to grant that motion without materially changing any other finding or conclusion in its decision regarding the merits of the French Action. (See Dkt. No. 386, Ex. C at 4.)
Thus, though the Appellate Court granted C.D.S.'s motion and stated in its final opinion that CDS6 is owned by CDS SARL (see id. ), the resolution of the ownership of CDS6 was not "necessary to support a valid and final judgment on the merits" in the French Action, Interoceanica, 107 F.3d at 91. That is, the Appellate Court's statement regarding the ownership of CDS6 was "mere dicta" and was not "a necessary element of the court's conclusion." Overview Books, 438 Fed.Appx. at 33-34. The Court is therefore not persuaded that Zetler should be collaterally estopped from bringing derivative claims based on the argument that C.D.S., and not CDS SARL, owns CDS6.
B. STANDING TO BRING DERIVATIVE CLAIMS
The Counterclaim Defendants argue that even if Zetler is not collaterally estopped from bringing derivative claims based on C.D.S.'s alleged ownership of CDS6, he lacks standing to bring those claims. The Counterclaim Defendants argue that because C.D.S. has only two shareholders, Zetler and Marechaux, and *560 since Marechaux is a counter-claim defendant, Zetler is the only person who stands to benefit from the derivative counter-claims. (See December 11 Letter at 4-5.) Consequently, the Counterclaim Defendants argue, because the derivative counterclaims based on C.D.S.'s alleged ownership of CDS6 are brought for Zetler's benefit and not for the good of the company he claims to represent, those claims should properly be characterized as direct claims. (See December 11 Letter at 4-5.) C.D.S. further argues that once these claims are properly characterized as direct claims, Zetler would lack standing to bring them. (See id. )
The adequacy of pleadings for a derivative suit brought under Rule 23.1 of the Federal Rules of Civil Procedure is determined under state law. See Wayne Cty. Employees' Ret. Sys. v. Dimon, 629 Fed.Appx. 14, 15 (2d Cir. 2015) ("Although Rule 23.1 is a 'rule of pleading that creates a federal standard as to the specificity of facts alleged,' the 'adequacy of those efforts is to be determined by state law.' " (quoting RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1330 (2d Cir. 1991) )). Since C.D.S. is a Delaware corporation, the issue of whether Zetler has standing to bring a derivative suit on its behalf is governed by Delaware law.[5] See id.
"The stockholder derivative suit is an important and unique feature of corporate governance. In such a suit, a stockholder asserts a cause of action belonging to the corporation." Rales v. Blasband, 634 A.2d 927, 932 (Del. 1993). Under Delaware law, the analysis of whether a claim is properly characterized as direct or derivative "must be based solely on the following questions: Who suffered the alleged harm-the corporation or the suing stockholder individually-and who would receive the benefit of the recovery or other remedy?" Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004). Shareholders in a closely held corporation can obtain relief by suing all remaining shareholders on behalf of the company in a derivative suit. See Haseotes v. Bentas, No. A-cv-19155, 2002 WL 31058540, at *5 (Del. Ch. Sept. 3, 2002) (allowing derivative suit brought by two shareholders holding 50% equity in a closely held corporation and alleging wrongdoing by the other two shareholders owning the remaining 50% of the company); see also Tuscano v. Tuscano, 403 F.Supp.2d 214, 222-23 (E.D.N.Y. 2005) ("Obviously, any benefit derived by a corporation through derivative litigation will inure to an individual who owns half of that corporation.... Under New York law, a shareholder derivative action is an appropriate method for one fifty-percent shareholder to obtain relief in the name of the corporation against the other fifty-percent shareholder.").
The eighth and ninth counterclaims in the Second Amended Answer allege that C.D.S. was harmed because the company never asserted its ownership rights to CDS6 when CDS SARL used that software without compensating C.D.S. (See Second Amended Answer ¶¶ 289-99.) These claims assert harms suffered by the company, and seek a remedy-C.D.S.'s lost compensation-that would redound to C.D.S.[6] The fact that Zetler is the only shareholder of C.D.S. who is not also a *561 shareholder of CDS SARL does not render these claims direct claims under Delaware law. See Haseotes, 2002 WL 31058540, at *5. Thus, Zetler has standing to bring derivative counterclaims on behalf of C.D.S. regarding that company's ownership of CDS6.
C. CHOICE OF LAW
In its first counterclaim, Rapid Systems seeks to enforce ownership rights it claims to possess over Agencypad and the Database based on several copyrights registered with the United States Copyright Office. (See Second Amended Answer ¶¶ 237-48.) The Counterclaim Defendants challenge the validity of Rapid Systems's asserted copyrights on several grounds. With respect to copyrights in the Database, they argue that the material is not original work and so is not copyrightable. (See, e.g., December 11 Letter at 5.) In response, Rapid Systems argues that because the Database was first developed and published in South Africa, the Court should apply South African law to the question of whether the Database is original and thus copyrightable. (See December 4 Letter at 7.) The Counterclaim Defendants, on the other hand, maintain that because the issue here is whether the Counterclaim Defendants infringed on a valid United States copyright, in the United States, United States law should apply to the question of whether the Database is copyrightable. (See December 11 Letter at 5.)
In the landmark case Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 (2d Cir. 1998), the Court of Appeals for the Second Circuit established principles for deciding conflicts of law issues in international copyright actions. The Court first noted that the Copyright Act itself does not contain guidance for choice of law issues arising in copyright disputes, and so the courts need to "fill the interstices of the Act by developing federal common law on the conflicts issue." Id. at 90. The Court then distinguished between ownership issues and infringement issues in copyright suits. With respect to copyright ownership, the Court held that "[c]opyright is a form of property, and the usual rule is that the interests of the parties in property are determined by the law of the state with the most significant relationship to the property and the parties." Id. (internal quotation marks and citation omitted). In contrast, with respect to infringement questions, the Court held that the principle governing certain choice of law questions in tort suits applies, namely that the court should apply the law of the state where the infringement occurred. See id. at 91. The Court then applied Russian law to determine the ownership of copyrights over newspaper articles written and first published in Russia, as Russia had the most significant relationship to those articles. See id. at 90-91.
This case raises both ownership and infringement questions regarding the Database-whether Rapid Systems owns a valid copyright in the Database, and whether the Counterclaim Defendants infringed on that copyright. There is no dispute that infringement questions in this case will be decided under United States law, since the alleged infringements occurred in this country. (See December 4 Letter; December 11 Letter.)
But United States law also applies to the ownership issues. The United States has the strongest relationship to the copyright ownership dispute here. Unlike in Itar-Tass, in which the parties sought to enforce intellectual property rights based on international treaties, Rapid Systems brings its suit based on copyrights registered with the United States Copyright Office. It is thus United States law that *562 gives rise to the ownership claim at issue here. Additionally, the ownership dispute over the Agencypad Data is necessarily intertwined with the ownership dispute over Agencypad, to which United States law will indisputably apply. Consequently, all copyright ownership and infringement questions in this case will be adjudicated under United States law.
III. ORDER
For the reasons stated above, it is hereby
ORDERED that the request of plaintiff and counterclaim defendant C.D.S., Inc., and counterclaim defendants Diane Treat, Jerome Viollon, Christelle Riot, Christophe Racle, Jerome Marechaux, and CDS SARL (collectively with C.D.S., Inc., the "Counterclaim Defendants") for an order stating that defendants and counter-claim plaintiffs Bradley Zetler, CDS, LLC, and Rapid Systems CC (collectively, "Rapid Systems") are collaterally estopped from arguing that under the terms of a 2001 Executive Distributorship Agreement among the parties, Rapid Systems owns the software Agencypad or the portions of a database underlying and accessed by that software (see Dkt. No. 385) is GRANTED;
ORDERED that the request of the Counterclaim Defendants for an order stating that Rapid Systems is collaterally estopped from arguing that the company C.D.S., Inc., and not CDS SARL, owns the software CDS6 (see Dkt. No. 385) is DENIED;
ORDERED that the request of the Counterclaim Defendants for an order stating that Bradley Zetler lacks standing to bring derivative counterclaims on behalf of C.D.S., Inc. (see Dkt. No. 385) is DENIED ; and it is further
ORDERED that all copyright ownership and infringement issues here in dispute related to the database underlying the software Agencypad will be adjudicated under the applicable laws of the United States.
SO ORDERED.

17 U.S.C. Section 201(b) provides:
In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.
17 U.S.C. § 201(b).

The parties have used various terms to refer to the portions of the Database accessed and relied upon by Agencypad. The Court uses the term "Agencypad Data" for the sake of clarity and offers no opinion on the ownership of those portions of the Database or their relationship to Portfoliopad or any other software product.

By letter dated December 11, 2017, Rapid Systems responds to the Counterclaim Defendants' December 11 Letter, stating that the Counterclaim Defendants improperly raised four new issues in their reply letter. (See Dkt. No. 391.) The first supposed new issue regarded a statement in the Counterclaim Defendants' reply letter implying that the French courts ruled on matters of United States copyright law in deciding that Agencypad is not a derivative work of Portfoliopad. (See id. ) This issue is irrelevant to the pretrial issues discussed in this Decision and Order, and, regardless, the French courts did not rule on issues of United States copyright law but merely stated that, for purposes of the EDA, Agencypad is not an outgrowth of Portfoliopad. The remaining points in Rapid Systems's letter regard three minor differences in how the parties read the decisions of the French courts with respect to the ownership of CDS6. (See id. ) These points of disagreement are all irrelevant to this Court's decision that Rapid Systems will not be precluded from arguing at trial that C.D.S. owns CDS6.

Rapid Systems seems to argue that the Counterclaim Defendants are attempting to claim ownership over the entire Database. (See December 4 Letter at 4.) However, the Counterclaim Defendants seem to seek collateral estoppel only with respect to the Agencypad Data. (See December 11 Letter at 1-2 (Counterclaim Defendants clarifying that the collateral estoppel argument applies only to the Agencypad Data).) Regardless, Rapid Systems will be precluded only from claiming ownership under the EDA of the Agencypad Data, and not the entire Database.

The Counterclaim Defendants correctly state that Delaware law applies to the question of Zetler's standing to bring the derivative suits (see November 20 Letter at 5), and Rapid Systems does not challenge that statement (see December 4 Letter).

Indeed, in his pleadings bringing the derivative counterclaims, Zetler seeks damages for C.D.S. and not for himself. (See Second Amended Answer at 47-48.)